Citation Nr: 1220799 
Decision Date: 06/14/12 Archive Date: 06/22/12

DOCKET NO. 09-09 280 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to an evaluation in excess of 40 percent for chronic lumbosacral strain with associated degenerative arthropathy.

2. Entitlement to an effective date earlier than August 4, 2008 for the assignment of a 40 percent evaluation for chronic lumbosacral strain with associated degenerative arthropathy.



REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

C. M. Powell, Counsel

INTRODUCTION

The Veteran served on active duty from January 1987 to January 1991.

This matter comes before the Board of Veterans' Appeals (Board) from a July 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Waco. Texas. In that decision, the RO granted service connection for chronic lumbosacral strain with associated degenerative arthropathy and assigned a 20 percent evaluation, effective April 25, 2003. In January 2008, following issuance of a December 2007 Statement of the Case (SOC), the Veteran perfected an appeal with the issue of entitlement to an initial evaluation in excess of 20 percent for chronic lumbosacral strain with associated degenerative arthropathy. Thereafter, in a September 2008 decision, the RO increased the evaluation for the Veteran's low back disability to 40 percent evaluation, effective August 4, 2008. Subsequently, the Veteran timely appealed the assigned August 4, 2008 effective date.

The Veteran may have raised the issue of entitlement to an earlier effective date for service connection, since he referenced the year 2002 in a January 2011 letter. However, such issue has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it and it is referred to the AOJ for appropriate action. 


FINDINGS OF FACT

1. On January 11, 2011, prior to the promulgation of a decision in the appeal, the Board received notification from the Veteran that a withdrawal of the appeal for entitlement to an increased evaluation for his service-connected chronic lumbosacral strain with associated degenerative arthropathy is requested.

2. Prior to August 4, 2008, the Veteran's low back had functional flexion of greater than 30 degrees. There was a change in disability documented on August 4, 2008.

 
CONCLUSIONS OF LAW

1. The criteria for withdrawal of an appeal for an increased evaluation for service-connected chronic lumbosacral strain with associated degenerative arthropathy by the Veteran have been met. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2002); 38 C.F.R. § 20.204 (2011).

2. The criteria for an effective date earlier than August 4, 2008, for the assignment of a 40 percent evaluation for chronic lumbosacral strain with associated degenerative arthropathy, have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107, 5110 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.155, 3.157, 3.159, 3.400 (2011). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Withdrawal Of Appeal

The Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. 38 U.S.C.A. § 7105 (West 2002). An appeal may be withdrawn as to any or all issues involved in the appeal at any time before the Board promulgates a decision. 38 C.F.R. § 20.204 (2011). Withdrawal may be made by the appellant or by his or her authorized representative. 38 C.F.R. § 20.204. In the present case, in a January 11, 2011 statement, the Veteran requested to withdraw his appeal for entitlement to an increased evaluation for his service-connected chronic lumbosacral strain with associated degenerative arthropathy, and, hence, there remain no allegations of errors of fact or law for appellate consideration. Accordingly, the Board does not have jurisdiction to review the appeal regarding entitlement to an increased evaluation for his service-connected chronic lumbosacral strain with associated degenerative arthropathy and it is dismissed


Earlier Effective Date

I. Duty to Notify and Assist

The Veterans Clams Assistance Act of 2000 as amended (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2011).

As noted above, the earlier effective date appeal arises from the Veteran's disagreement with effective date assigned in connection with the grant of an increased rating for chronic lumbosacral strain with associated degenerative arthropathy. The courts have held, and VA's General Counsel has agreed, that where an underlying claim for benefits has been granted and there is disagreement as to "downstream" questions, the claim has been substantiated and there is no need to provide additional VCAA notice or prejudice from absent VCAA notice. Hartman v. Nicholson, 483 F.3d 1311, 1314-15 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112, 116-17 (2007); VAOPGCPREC 8-2003 (2003). The Court has elaborated that filing a notice of disagreement begins the appellate process, and any remaining concerns regarding evidence necessary to establish a more favorable decision with respect to downstream elements (such as an effective date) are appropriately addressed under the notice provisions of 38 U.S.C.A. §§ 5104 and 7105 (West 2002). There is no argument or evidence that there was inadequate notification under those statutes in this case.

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c), (d). This "duty to assist" contemplates that VA will help a claimant obtain records relevant to his claim, whether or not the records are in Federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4). 

In this case, VA obtained the Veteran's service treatment records (STRs) and all of the identified post-service private and VA treatment records. Moreover, as shown below, neither an examination nor a medical opinion is necessary to make a decision on this claim.

For the reasons set forth above, the Board finds that VA has complied with the VCAA's notification and assistance requirements. The claim for entitlement to an effective date earlier than August 4, 2008 for the assignment of an increased, 40 percent rating for chronic lumbosacral strain, is thus ready to be considered on the merits.

II. Legal Criteria

Earlier Effective Date

Unless specifically provided for otherwise in this chapter, the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier 
than the date of receipt of application therefor. 38 U.S.C.A. § 5110(a). 

The effective date of an award of disability compensation to a veteran shall be the day following the date of discharge or release if application therefor is received within one year from such date of discharge or release. 38 U.S.C.A. § 5110(b)(1) (West 2002); 38 C.F.R. § 3.400 (2011).

The effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, if an application is received within one year from such date. 38 U.S.C.A. § 5110(b)(2) (West 2002); 38 C.F.R. § 3.400(o)(2) (2011). 

 This statutory provision is implemented by regulation that provides that the effective date for an award of increased compensation will be the date of receipt of claim or the date entitlement arose, whichever is later. 38 C.F.R. § 3.400(o)(1) (2011).

An exception to the general rule regarding increased ratings applies, however, under circumstances where the evidence demonstrates that a factually ascertainable increase in disability occurred within the one-year period preceding the date of receipt of a claim for increased compensation. If an increase in disability occurred within one year prior to the claim, the increase is effective as of the date the increase was "factually ascertainable." If the increase occurred after the date of claim, the effective date is the date of increase. 38 U.S.C.A. § 5110(b)(2); Dalton v. Nicholson, 21 Vet. App. 23, 31-32 (2007); Harper v. Brown, 10 Vet. App. 125 (1997); 38 C.F.R. 3.400 (o)(1)(2); VAOPGCPREC 12-98 (1998).

Spine Regulations

Disabilities found in 38 C.F.R. § 4.71a, Diagnostic Codes 5235 to 5243 are evaluated using the General Rating Formula for Diseases and Injuries of the Spine. Under the general rating formula, a 10 percent evaluation is warranted for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. A 20 percent rating is warranted if the evidence demonstrates the following: forward flexion of the thoracolumbar spine greater than 30 degrees, but not greater than 60 degrees, or the combined range of motion of the thoracolumbar spine is not greater than 120 degrees, or there is muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis or abnormal kyphosis. A 40 percent evaluation is called for when forward flexion of the thoracolumbar spine 30 degrees or less, or when the veteran suffers from favorable ankylosis of the entire thoracolumbar spine. Finally, unfavorable ankylosis of the entire thoracolumbar spine warrants a 50 percent rating, and a 100 percent rating is assigned for unfavorable ankylosis of the entire spine. 38 C.F.R. 
§ 4.71a, Diagnostic Code 5237 (lumbosacral strain).

Under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, a 10 percent evaluation is assigned for incapacitation episodes having a total duration of at least one week but less than 2 weeks during the past 12 months. A 20 percent evaluation is assigned for intervertebral disc syndrome with incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months; a 40 percent evaluation is assigned for intervertebral disc syndrome with incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months; and a 60 percent evaluation is assigned for incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. 38 C.F.R. § 4.71a, Formula for Rating IVDS. An incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. Id., Note (1).


III. Legal Analysis

Initially, we note that this is not a freestanding claim for an earlier effective date. Rather, there had been an on-going appeal of the evaluation assigned for the low back disability. The AOJ determined that there was a material change in the condition and assigned a staged rating. The withdrawal of part of the appeal is nothing more than an acknowledgement that he is satisfied with the current 40 percent evaluation. However, whether the issue is phrased as entitlement to an earlier effective date for the 40 percent evaluation or entitlement to an evaluation in excess of 20 percent prior to August 4, 2008, the analysis is the same. The decision to allow, deny or grant in part always has an effective date implication. Here, we agree that there has been a material change in the condition and that a staged rating is warranted. 

In the present case, the Veteran contends that the effective date of his 40 percent evaluation for his service-connected low back disability should be in 2002. However, based on a thorough review of the record, the Board finds that the Veteran's claim must be denied.

In this regard, the record demonstrates that on VA examination in December 2003, the Veteran had the following thoracolumbar ranges of motion: flexion of 0-50 degrees with 50-90 degrees painful; extension of 0-20-30 degrees and painful; right and left lateral flexion of 0-30 degrees and normal, respectively; and right and left rotation of 0-30 degrees and normal, respectively. The Veteran was able to rise on his toes and heels. He did not report any weakness or sensory variation. Posture was normal. There was no muscle spasm and gait, strength and posture were normal. His sensory and motor examination was intact and his reflexes and rectal examination was normal.

In August 2007, the Veteran reported that he could flex greater than 30 degrees, only with the assistance of his arms and hands braced against his thighs. 

An October 2007 VA examination report shows that the Veteran had the following thoracolumbar ranges of motion: flexion of 0-75 degrees with mild discomfort; extension of 0-25 with mild discomfort; right and left lateral flexion of 0-30 degrees, with minimal discomfort respectively; and right and left rotation-30 degrees, with minimal discomfort respectively. No additional limitations were noted with three repetitions of movement during the physical examination that is related to pain, fatigue, incoordination, weakness, or lack of endurance. The Veteran had objective evidence of painful motion without spasm, weakness, or tenderness. The Veteran had well-muscled thighs and calves without signs of disuse or arthropathy that would indicate a chronic disuse syndrome of his back or neuropathy. There were no postural abnormalities, fixed deformity (ankylosis), or abnormality of musculature. Sensory and motor examination was intact and reflexes were diminished but symmetrical. The Veteran was not diagnosed with intervetebral disc syndrome and no incapacitating episodes were noted.

On VA examination on August 4, 2008, the Veteran had the following thoracolumbar ranges of motion: flexion-20 degrees; extension-10 degrees; right and left lateral flexion-10 degrees, respectively; and right and left rotation-10 degrees, respectively. No additional limitations were noted due to weakness, lack of endurance and incoordination. The Veteran had objective evidence of muscle spasm and guarding. Tenderness was noted on palpation in the midline and over the lumbosacral paraspinal muscles. He ambulated with a slow gait. There were no postural abnormalities, fixed deformity (ankylosis), or abnormality of musculature. No sensory deficit or muscular atrophy was noted. Muscle tone was normal and motor strength was grade 5/5 in both lower extremities.

The Board finds that the Veteran is not entitled to an effective earlier than August 4, 2008 for the assignment of a 40 percent evaluation for his service-connected low back disability. Indeed, it is not until his August, 4, 2008 VA spine examination that it is factually ascertainable that the Veteran's low back symptomatology (i.e., flexion of 20 degrees) corresponds to the criteria for a 40 percent evaluation under Diagnostic Codes 5237-5242. There is no evidence showing such findings prior to this time.

The Board also finds that the Veteran's general assertions that he is entitled to an earlier effective date do not show that he satisfied the criteria for a 40 percent evaluation for his low back disability prior to August 8, 2008. Lay testimony is competent to establish the presence of observable symptomatology. Layno v. Brown, 6 Vet. App. 465, 469 (1994). However, the Veteran's own general assertions are outweighed by the medical records before the Board which do not show entitlement to a 40 percent evaluation prior to August 4, 2008. We specifically considered his pleadings and lay evidence, to include the August 2007 report that he was limited to 30 degrees or less of flexion. However, examinations prior to his report and following such report in October 2007 clearly establish that his remaining functional range of motion was far greater than 30 degrees. See DeLuca v. Brown, 8 Vet. App. 202 (1995). The Board finds that the clinical findings are more probative and credible than his lay evidence in this regard. Thus, the most probative evidence established that he was no more than 20 percent disabled prior to August 4, 2008.

Based on the foregoing, the Board finds that an effective date earlier than August 4, 2008, for the award of a 40 percent evaluation for chronic lumbosacral strain with associated degenerative arthropathy is denied. Stated differently, in this on-going appeal, prior to August 4, 2008, the low back disability was no more than 20 percent disabling.

As the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application. See generally Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001).


ORDER

The appeal for an increased evaluation for chronic lumbosacral strain with associated degenerative arthroplasty, currently rated as 40 percent disabling, is dismissed.

Entitlement to an effective date earlier than August 4, 2008 for the assignment of a 40 percent evaluation for chronic lumbosacral strain with associated degenerative arthropathy is denied.


____________________________________________
H. N. SCHWARTZ
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs